UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROBERT E. MURPHY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00463-JRO-MJD |
| | ) | |
| ALLEN Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

Robert E. Murphy's petition for a writ of habeas corpus seeks relief from his conviction and sanctions in prison disciplinary case ISR 24-12-3570. For the following reasons, his petition, dkt. [8], is **DENIED**, and this action is **DISMISSED**.

**II. THE DISCIPLINARY PROCEEDING**

On December 19, 2024, Officer A. Carson was working in the Disciplinary Hearing Body ("DHB") office when Murphy walked into the office and asked her a question. Dkt. 15-1 at 1. When Murphy left, he stopped in the lay advocate room to talk to incarcerated individual Eriberto Quiroz. *Id.* Murphy asked Quiroz, "Hey Q, you get that money to dough boy (Sampson Dejuan #951830)?" *Id.* Later that day, Officer Carson wrote a conduct report charging Murphy with violating offense 220, engaging in unauthorized financial transaction. *Id.* At the conclusion of her report, Officer Carson wrote, "By engaging in the discussion of moving monies from one Incarcerated Individual to another without prior

authorization, the aforementioned action violates DHB code 220 Engaging in Unauthorized Financial Transaction." *Id.*

On December 27, staff screened Murphy, advised him of the charge, and provided him with copies of the conduct report and notice of disciplinary hearing (screening report). Dkt. 15-2 at 1. Murphy pleaded not guilty. *Id.* Murphy requested three witnesses.

The first witness was offender Tagliaferri, who Murphy put forward to answer the question, "How many times have we had a conversation with Sgt. Ernst and Officer Carson chimed in?" *Id.* The request was denied as irrelevant. Second, he wanted Officer Carson as a live witness to answer, "Is it retaliation for me saying I didn't like gays?" This request was also denied as not relevant. *Id.* Third, he wanted Sgt. Ernest as a witness, but the request was denied as irrelevant. *Id.*

For physical evidence, Murphy requested trust fund paperwork, but that was denied as irrelevant. *Id.* He also requested body camera of his conversation, and that was denied because it was not available. *Id.*

On December 27, Murphy submitted a request for interview form to Sgt. Ernest requesting additional evidence of Carson's body camera. Dkt. 15-3 at 1. His specific request for footage stated that he wanted footage "from the time she walked the screening officer into the facility to the time she walked him out up front." *Id.*

On January 3, 2025, Murphy submitted another interview form to Sgt. Ernest, requesting a "continuance and proper evidence. To avoid the clear

conspiracy vs me." *Id.* at 2. He wrote, "I need a continuance as #1 These are not the questions I asked, as the screen [sic] officer misheard, sound familiar?" *Id.* He wanted to ask the question, "How many conversations would I have with Sgt. Ernest in front of OFC Carson and OFC Carson would look up and say 'wait what'?" *Id.* Murphy said this "goes to credibility" as OFC Carson "misheard." *Id.* This request was denied as not relevant. *Id.*

Murphy also asked again for Officer Carson's body cam because it would have recorded "the alleged conversation and disprove her claim of what was said." *Id.* This request was denied because the video was not available. *Id.*

Also on January 3, disciplinary hearing officer ("DHO") Sgt. J. Pardue reviewed surveillance video of the DHB room (which was a different video than the body camera footage requested by Murphy and which was no longer available) and prepared a video review report, noting that Murphy was not allowed to view the video because it would allow him "to know the angles and capabilities of the prison's surveillance system." Dkt. 15-6. The video review report states:

> I Sgt J. Pardue reviewed video footage for ISR 24-12-0003570.
>
> 8:09:09 AM - Offender Murphy #117550 can be seen entering into the waiting area of DHB.
>
> 8:09:12 AM - Murphy walks into the officer's area of DHB where Officer Carson can be seen sitting at desk.
>
> 8:09:31 AM - Murphy exits the officer's area and enters a side room with nothing in his hands. Murphy can be seen slightly moving the door and moves out of video. At this time Officer Carson can be seen looking in the direction of the office where Murphy just entered.

> 8:10:45 AM - Murphy appears back on video and can be seen speaking. He can be seen holding a piece of paper in his hands.
>
> 8:11:09 AM - Murphy exits the side room and re-enters the officer's DHB area.
>
> 8:11:38 AM - Murphy exits the officer's DHB area and re-enters the side office.
>
> 8:12:56 AM – Offender Quirz #219483 can be seen in the office speaking with Murphy.
>
> 8:13:09 AM - Muphy exits the side office and leaves the building.
>
> 8:13:41 AM – Quirz exits the side office and walks into the officer's DHB area. At this time Quirz and Carson can be seen speaking to each other.
>
> There is no audio to determine what is being said.

Dkt. 15-6.

Also on January 3, DHO Pardue used the video review report form to address Murphy's evidentiary requests:

> ▪ Offender Murphy #117560 requested that I review body camera footage from Officer Carson's body camera for the date of 12/19/2024 around 8:09 AM. I was advised there was not any footage to pull from.
>
> ▪ Offender Murphy #117550 requested trust fund paperwork. No reason was documented as the reason for this paperwork. At this time I do not see any relevance to this request and it will be denied, but Murphy may bring the document to his hearing for review if he can show why it is relevant to the case.
>
> ▪ Offender Murphy #117550 requested offender Tagliaferri # 278071 as a witness with the question, "How many times have we had a conversation with Sgt. Ernst and Carson chimed in?" This request is denied because it is not relevant to the conduct in question.

> ▪ Offender Murphy #117550 requested for Officer Carson to be a live witness with the question "Is it retaliation for me saying I didn't like gays?" That request is denied as it is opinionated and not relevant to the case.
>
> ▪ Offender Murphy #117550 requested for Sgt. Ernest as a witness with the question "How many times have we had a conversation with Sgt. Ernst and Officer Carson chimed in?" This request is denied because it is not relevant to the conduct in question.
>
> ▪ Offender Murphy #117550 submitted a request slip asking for body camera footage from Officer Carson from the time she walked Officer Robertson to the facility to the time she walked him back up front for the date of 12/27/24. Murphy claims that they were conspiring to find him guilty. This request is denied. It is not relevant to the conduct report and neither of those two have tried or will influence my decision as the hearing officer for these cases.

Dkt. 15-8.

On January 15, DHO Pardue held the disciplinary hearing. Dkt. 15-4. Murphy appeared and pled not guilty. *Id.* at 1. Under the section of the report for offender's comment, the following appears:

> (Statement-Written Submitted). I asked him about Manga. I told him to bring the Manga out and give it to doughboy. It was something miss said. This is retaliation. When Carson started working I told her I didn't watch TV with homosexuality. Carson took offense to the comment. It should have been a 346 if I said it, but I didn't. Does not meet criteria for 220. I was talking about a Christmas meal to Quiroz.

*Id.*

In his written statement, Murphy set out portions of the body camera policy as well as portions of the disciplinary code 02-04-101. Dkt. 15-5. He also denied that he engaged in the charged conduct. *Id.* at 4. He wrote that "I did in

fact speak to Quiroz but about Magna, not money" and that "Magna is a Japanese style of book with animated like characters drawn." *Id.*

At the hearing, DHO Pardue considered offender Tagliaferri's statement, "This has happened," in response to Murphy's question, "Have I not had a conversation with Sgt. Ernst right in front of OFC A. Carson, and she, OFC Carson, look up and say what are you talking about." Dkt. 15-7 at 1. The DHO also considered Officer Carson's response of "No" to Murphy's question, "Is this retaliation for my religious preferences about homosexuality." *Id.* at 2.

After considering the witness statements, the conduct report, Murphy's written and oral statements, and the video, DHO Pardue found Murphy guilty of 220. Dkt. 15-4. He explained the reason for his decision: "All evidence was considered. It is clear that the statement 'Hey Q, you get the money to dough boy' is a discussion about engaging in authorized financial activity. No further evidence was requested. No procedural errors. Time frame not a valid reason for not guilty or dismissal. All evidence requests were addressed." *Id.* DHO Pardue imposed a custodial sanction of a 30-day loss of earned credit time. *Id.*

Murphy's appeals were denied. This habeas action followed.

## III. DISCUSSION

The respondent first argues that Murphy failed to exhaust his administrative remedies as to one of his claims, but the Court finds it more efficient to consider the claims on the merits. *See Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018).

Prisoners may not be deprived of good-time credits or of credit-earning

class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563 –67 (1974).

Murphy's claims in his amended petition are: 1) he was denied evidence; 2) he was not allowed to cross-examine the reporting officer and the conduct report was wrong, in violation of Indiana Department of Correction (IDOC) policy; 3) he was charged with the wrong offense; and 4) he has newly discovered evidence. Dkt. 8 at 3 –6.

**A. Denial of Evidence**

Murphy first argues that he was denied Sgt. Ernest as a witness and was denied body cam evidence. Dkt. 8 at 3.

Due process requires that in prisoner disciplinary proceedings, prisoners be given access to material, exculpatory evidence. *Johnson v. Brown,* 681 F. App'x 494, 496 –97 (7th Cir. 2017). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry,* 539 F.3d 766, 780–81 (7th Cir. 2008). An inmate "facing disciplinary proceedings should

be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566.

Murphy wanted to call Sgt. Ernest to ask, "How many times have I had a conversation with Sgt. Ernst and OFC A. Carson looked up and said, 'What you talking about?'" Dkt. 15-2 at 1. This request was denied on the basis of relevance. Dkt. 15-8. Offender Tagliaferri, however, responded to the same question by saying, "This has happened." Dkt. 15-2. Even though offender Tagliaferri's response was deemed irrelevant, it was considered by the DHO. *Id.* Therefore, even if Sgt. Ernest had responded the same way and acknowledged that it had happened before, it would be repetitive evidence. "[P]risoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

The request for body cam evidence was denied because it was not available. Prison officials are not obligated to produce evidence that does not exist. *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017). There is no basis for habeas relief for the denial of any evidence.

**B. IDOC Policy Violations**

Murphy contends that he was denied his right to cross-examine his "accuser" as stated in prison policy. Dkt. 8 at 4. He also alleges that the conduct report was incomplete and violated IDOC policy.

First, prison policy does not provide a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("state-law violations provide no basis

for federal habeas relief."); *Keller v. Donahue,* 2008 WL 822255, 271 Fed. Appx. 531, 532 (7th Cir. Mar. 27, 2008) (an inmate "has no cognizable claim arising from the prison's application of its regulations."). The federal habeas statute permits a state inmate to challenge the duration of his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Second, "[c]onfrontation and cross-examination present greater hazards to institutional interests" and are not required in the context of disciplinary proceedings. *Wolff,* 418 U.S. at 567; *see also Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (inmates have "no right to confront or cross-examine adverse witnesses" in disciplinary proceedings.). Murphy's contention that he had a right to cross-examine the reporting officer is mistaken. This claim fails.

Murphy further alleges that Officer Carson did not include in her report anything that the other inmate said in response to Murphy. He points to IDOC policy in support of his claim that the conduct report therefore was incomplete. Again, a violation of prison policy is not a basis for habeas relief.

**C. Proper Offense**

Next, Murphy argues that he should have been found guilty of offense C-346 instead of B-220. Offense 220 (Engaging in Unauthorized Financial Transaction), is defined as:

> engaging in or possessing materials used for unauthorized financial transactions. This includes, but is not limited to, the use or possession of identifying information of credit cards, debit cards, or any other card used to complete a financial transaction. This

> includes the discussion of engaging in unauthorized financial transaction(s) with any other person.

Dkt. 15 –13 at 5.

Offense 346 (Business Activity) is defined as "unauthorized participation in any business activity or any activity not authorized under Policy and Administrative Procedure 02-01-116, 'Offender Business Activities.'" *Id.* at 9.

Murphy presented this claim to the DHO at the hearing. The DHO found that there was sufficient evidence to support the unauthorized financial transaction offense, 220. Murphy's statement to Quiroz satisfies the "discussion of engaging in unauthorized financial transaction(s) with any other person" portion of offense 220. Dkt. 15-13 at 5. Therefore, there is no basis for habeas relief on this claim.

**D. Newly Discovered Evidence and Sufficient Evidence**

For his final claim, Murphy argues that on the day of the hearing, another officer told him that Officer Carson "would talk bad" about Murphy and had said "she could find a reason to fire" Murphy. Dkt. 8 at 6. Murphy alleges that he asked for a continuance of the hearing to obtain the officer's written statement, but the DHO denied his request as irrelevant. *Id.*

The DHO's alleged refusal to postpone the hearing to allow Murphy to obtain a statement from the officer would violate due process only if the precluded evidence was material and exculpatory. *Johnson,* 681 F. App'x 496–97. The alleged disparaging comments made by Carson at some unknown time would not disprove what Carsno heard Murphy say to Quiroz on December 19, 2024. Even if it tended to undermine the credibility of Carson at the hearing, it

would not necessarily undermine the accuracy of Carson's report, which was written on December 19—the same day as the incident. In any case, another officer's testimony that Carson "would talk bad" about Murphy cannot be considered material or exculpatory as it is consistent with Carson's report explaining the violation. The denial of this alleged evidence did not violate due process.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. This is a "lenient" standard that requires only a "modicum of evidence." *Hawkins v. Sevier*, 169 F.4th 749, 753 (7th Cir. 2026) (internal citations omitted). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (same).

Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011). The Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

As stated in the conduct report, Murphy asked Quiroz, "Hey Q, you get that money to dough boy?" Dkt. 15-1 at 1. Murphy argues that he never said the

word "money," and that he actually said "manga, which is a book." Dkt. 20 at 2.[1] He made this argument to the DHO, and the DHO considered his position. Dkt. 15-4.[2] The DHO weighed the evidence and gave more credit to Officer Carson's conduct report than to Murphy's defense that he never said "money." Ascertaining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455 –56. In this case, there was "some" evidence that supported the DHO's decision.

## IV. CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Murphy to the relief he seeks. Accordingly, Murphy's petition for a writ of habeas corpus must be **DENIED** and

[1]In his reply, Murphy submits an affidavit from Quiroz, dkt. 20-1, but this evidence was not requested before or during the hearing nor was it presented to the DHO, so it cannot be considered by the Court. "Arguments raised for the first time in a reply brief are waived." *United States v. Carney*, 185 F.4th 713, 716 (7th Cir. 2026).

[2] At his hearing, Murphy also said that he "was talking about a Christmas meal to Quiroz." Dkt. 15-4. It is unclear how this explanation is consistent with his defense that he said "manga" instead of "money."

the action **DISMISSED with prejudice.** Judgment consistent with this Order shall now issue by separate entry.

**SO ORDERED.**

Date: 10/16/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

ROBERT E. MURPHY
117550
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov